INHABITANTS OF FOXCROFT *vs.* INHABITANTS OF CORINTH.

*Pauper—intention of overseers in furnishing supplies does not affect settlement of.*

When supplies are furnished by the overseers of the poor to, and are received by, a pauper who is then actually in need of immediate relief, the intention of the overseers thereby to prevent a settlement by such pauper in their town is immaterial to qualify the legal effect of their action.

But the fact that five years continued residence without assistance have nearly expired, coupled with an intention on the part of the overseers to prevent the paupers gaining a settlement, may properly be considered by the jury in weighing the credit to be given to their testimony as to the existence of actual distress and the necessity for immediate relief.

ON EXCEPTIONS.

This was an action to recover for supplies furnished one Millet and his family as paupers. It was admitted that the settlement of the alleged pauper at the time the supplies were furnished was in Corinth, and it was admitted or proved that Millet had resided in the plaintiff town four years and about eight months without having received pauper supplies within that time. The principal question in the case was whether Millet and his family, at the time the supplies were furnished, were destitute, within the meaning of the statute, and had fallen into such distress as demanded immediate relief.

It was proved that two of the overseers of the poor and three other residents of Foxcroft (one of them the agent and attorney of the town) visited the family and, after conversation with them and examination into their condition, furnished them certain supplies which were afterward consumed in the family.

The plaintiffs contended that the supplies were needed to relieve immediate destitution, and that they acted in good faith in furnishing them; but the defendants claimed that the supplies were furnished to prevent the Millet family from gaining a settlement by a

five years' residence, and were not furnished in good faith and to relieve actual destitution.

The defendants' counsel requested certain instructions which, with the instructions qualifying them, given by the presiding judge, are stated in the opinion.

The verdict was for the defendants and the plaintiffs excepted.

*Lebroke* and *Pratt*, for the plaintiffs.

*Rowell* and *D. F. Davis*, for defendants.

APPLETON, C. J. This is an action to recover pay for supplies furnished one Millet and his family, whose settlement at the time was admitted to be in the defendant town.

It was in proof that Millet had resided in the plaintiff town four years and eight months when these supplies were furnished. It is obvious that relief furnished to prevent a pauper gaining a settlement in the town where he was then residing, and when there was no existing distress to be relieved, would not be in good faith and would not affect the settlement of the pauper. The question submitted to the jury was, whether supplies were furnished merely to prevent the paupers gaining a settlement or to relieve actual distress.

The plaintiffs' counsel requested the court to instruct the jury that, " if the alleged paupers were in actual need of immediate relief, as paupers, at the time the articles were furnished by the overseers of Foxcroft to supply the actual wants of said alleged paupers, and were received and used by them for that purpose, the intention of the overseers, in relation to fixing or affecting the settlement, would be wholly immaterial." On this point the court instructed the jury that " the request assumes that a case of necessity for immediate relief is made out, and that the supplies were furnished to supply such needs and were received and used by the alleged paupers. I give you this requested instruction with this qualification. I do not say 'would be wholly immaterial in the case;' but I say, if such a case is made out by proof, that the

overseers would be justified in relieving the destitution, although they might know and act upon the knowledge that it would prevent or postpone for five years more the gaining of a settlement, and might have taken steps to ascertain the condition of the family, which they would not have taken, if the alleged paupers had had an acknowledged settlement in their own town, and they might have intended that the act should have an effect on the settlement, as well as to relieve a case of destitution which came within the statute.  Or, in brief, I say, if it was an established case of destitution and necessity, within the rules I have given you, I do not see how there could be any fraud in relieving it."

The presiding judge thus, as will be perceived, affirmed the general principle of the requested instruction.  Now, he was not bound to use the language of the request, and he was at liberty to qualify any portion of the request, if he deemed a qualification necessary, provided the instruction with the qualification as given, was in accordance with law.

" I qualify the request in this only ; I do not say that their intentions would be *wholly* immaterial in the case."  This was the only qualification of the requested instruction.  Was it erroneous ? How stood the case ?  The distress of the paupers and the necessity of affording relief, when it was afforded, were the issues presented.  But in relation to these it was proper to call the attention of the jury to the condition of affairs, the history of the case, to use the expression of the presiding justice, as affecting the credibility of the testimony on the one side or the other.  The paupers' settlement in a few months would be in the plaintiff town by lapse of time.  The remark was made not to change the general instruction as given, but to call their attention to the actual state of things.  No change was made in the rule of law.  That was retained in all its original force.

This qualification or explanation had relation only to the weight to be given to the evidence.  The judgment of the overseers as to existent distress or as to the necessity of relief might be biased by the nearness of time when the settlement of the pauper would

become fixed. The overseers might the more acutely perceive the distress, or imagine an existent distress, when it did not actually exist, in their anxiety to prevent the gaining of a settlement, than they would under other and different circumstances. They might afford relief where there was no existent distress to be relieved. There might be, in the history of the case, circumstances tending to prove they did so. The jury might properly regard those circumstances in determining whether the distress really existed and relief was really furnished to remove distress; but if the distress actually existed, and the supplies were really furnished for its relief, then the instruction of the presiding justice was peremptory that the intentions of the overseers were immaterial.

*Exceptions overruled.*

CUTTING, WALTON, DICKERSON, BARROWS, and PETERS, JJ., concurred.